## AFFIDAVIT

I, Alexander S Garcia, do hereby state:

## INTRODUCTION

1. I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and have been employed since April of 2007. I am currently assigned to the office of the Assistant Special Agent in Charge (ASAC) in Nogales, Arizona.

2. As a Special Agent with HSI, I am responsible for investigating and enforcing violations of Federal law to include the enforcement of federal narcotics laws, immigration laws, the Money Laundering Control Act, and various customs violations.

3. I have attended and graduated from the Criminal Investigator Training Program, the ICE Special Agent Training Program, the ICE Advanced Intelligence Training Program, and the Customs Inspector Mixed Basic Police Academy, all of which are conducted at the Federal Law Enforcement Training Center in Glynco, Georgia. At this institution, I have received specialized training to include but not be limited to the following areas: illegal drug investigations, immigration investigations, alien smuggling, fraud investigations, cyber investigations, import/export smuggling investigations, intelligence development and reporting, child pornography investigations, firearms, defensive tactics, surveillance, and undercover operations.

4. In addition to my federal law enforcement service, I was employed as a state peace officer and Deputy with the Orange County Probation Department in California for five years. I received training for certification as necessary under the California Peace Officer Standards and Training (POST) and the California Standards and Training for Corrections (STC), and further accredited advanced training in conducting gang and drug investigations in institutions.

5. During my fifteen (15) year tenure in law enforcement, I have conducted and participated in several joint inter-agency investigations involving unlawful importation and the distribution of controlled substances. During these investigations, I have conducted physical surveillance, electronic surveillance, executed search and seizure warrants, reviewed taped recorded conversations, and records of drug traffickers. I have also analyzed the contents of numerous seized cellular telephones that had been in the possession of drug traffickers. I have personally interviewed numerous sources of information as well as confidential sources. Through my training and experience, including on-the-job discussions with other law enforcement

agents and cooperating suspects, I am familiar with the operational techniques and organizational structure of drug smugglers and drug trafficking distribution networks.

6. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), and Fed. Rule of Crim. Proc. 41(a)(2)(C), that is, an officer of the United States empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516. I am a customs officer within the meaning of Title 19, United States Code, Section 1401(i) and authorized to conduct investigations under Title 19 of the United States Code and under Title 18, Chapter 27 (Customs) of the United States Code.

SYNOPSIS

7. On June 3, 2012, Javier MENDOZA-Quintero and his spouse Angelica Janette GRIJALVA-Rico, attempted to exit the United States to the Republic of Mexico, at the DeConcini Port-of-Entry (POE), in Nogales, Arizona. Both subjects occupied a 2003 GMC Trailblazer bearing Sonora, Mexico license plate number WBE3416. Customs and Border Protection Officers (CBPO) stopped the vehicle occupied by MENDOZA-Quintero, GRIJALVA-Rico, and three minor children. MENDOZA-Quintero declared $4,000 U.S. currency, and GRIJALVA-Rico declared no currency. MENDOZA-Quintero had about $5,291 in U.S. currency on his person, and GRIJALVA-Rico had a total of about $15,000 in U.S. currency on her person. In post-Miranda interviews both subjects claimed that the money belonged to MENDOZA-Quintero and that they agreed not to declare the money upon exit from the U.S. to Mexico.

FACTS

8. On June 3, 2012, CBPO Anthony Nati was conducting outbound inspection operations at the DeConcini POE in Nogales, Arizona for traffic leaving the U.S. into the Republic of Mexico. CBPO Nati selected a green 2003 GMC Trailblazer bearing Sonora, Mexico license plate number WBE3416 for inspection. The driver of the vehicle was identified as Javier MENDOZA-Quintero, and his spouse, Angelica Janette GRIJALVA-Rico, and their three minor children were passengers. CBPO Nati asked all the occupants of the vehicle if they had any monetary instruments in excess of $10,000 in U.S. currency, ammunition or firearms, and they all stated that they did not.

9. CBPO Eugene Passolo spoke to all occupants of the vehicle in the Spanish language and asked if any of the occupants if they had any monetary instruments in the excess of $10,000 in U.S. currency, ammunition or firearms, and they all stated that they did not. MENDOZA-Quintero declared $4,000 in U.S. currency, and stated they were

coming from Tucson, AZ and returning home to Altar, Sonora, Mexico. Every other occupant stated that they did not have any currency.

10. All the occupants of the vehicle were escorted inside of the DeConcini waiting room in order for the vehicle to be inspected. CBPO Deborah Whitten then used her currency K9 "Xodus" on the subjects and received an alert on GRIJALVA-Rico for a trained odor. Officers removed three bundles of currency from her pockets. One from each of her front pockets and one from her right rear pocket. The total amount of currency seized from GRIJALVA-Rico's person was $15,000 in U.S. currency.

11. CBP officers conducted a physical count of the money on MENDOZA-Quintero's person and discovered that he had a total of $5,000 in U.S. currency in one rubber-banded bundle, and $291 in U.S. currency and $500 in Mexican pesos in his wallet.

12. Your affiant, with CBPO Nati as a witness, commenced to receive biographical information from GRIJALVA-Rico. Your affiant read GRIJALVA-Rico her Miranda Rights from a pre-printed form in the Spanish language. GRIJALVA-Rico waived her Miranda Rights verbally and in writing and decided to answer questions without the presence of an attorney. GRIJALVA-Rico stated the following: She travels to the U.S. only when her husband, MENDOZA-Quintero, is moving cattle. Her husband owns over one hundred head of cattle and is the president of the cattle company in Altar, Sonora, Mexico. All cattlemen must register with him in Altar.

13. GRIJALVA-Rico stated that she saw the placards saying that she is supposed to declare money in excess of $10,000 in U.S. currency before going to Mexico, and that she is knows it is illegal to not declare to customs officers. She was asked about having money and she told officers that she had none. She told officers that she did not have any money. Her husband told her to hide the money on her, but she did not know how much money it was. She did not declare the money to officers, because she was scared. Her husband gave her the money right before they crossed, and the money belongs to her husband. She does not know where her husband obtained the money, but he did not ask her to hide any money coming into the U.S. from Mexico. They only went to Wal-Mart to go shopping and went nowhere else.

14. Your affiant, with CBPO Nati as a witness, commenced to receive biographical information from MENDOZA-Quintero. Your affiant read MENDOZA-Quintero his Miranda Rights from a pre-printed form in the Spanish language. MENDOZA-Quintero waived his Miranda Rights verbally and in writing and decided to answer questions without the presence of an attorney.

15. MENDOZA-Quintero stated the following: He and his family entered the U.S. from Mexico. They went to the IHOP restaurant to eat in Nogales, AZ. Then, they went to

the Wal-Mart in Nogales, AZ, and afterwards to the Ross. They also went shopping to the small stores on Morley Avenue, and bought sodas and then proceeded toward Mexico. MENDOZA-Quintero stated that he crossed to buy stuff in the stores and did not meet with anybody in the U.S. He was planning to meet with Juan Manuel FLETCHER, who is involved in the cattle business. All of his dealings with cattle are paid via electronic fund transfer to and from his bank of Banorte account.

16. MENDOZA-Quintero said that he has seen the placards for declaring over $10,000 in U.S. currency while entering and leaving the U.S. He knows that he was supposed to declare the money. He told officers that he had $4,000 in U.S. currency, and he did not declare the money to officers, because he was scared. He made a mistake out of ignorance. He had the money in his briefcase when he entered the U.S. He gave the money to his wife in order to get the money out of his hands. At about 1850 hours I showed him the money and asked him to explain where he got the money. He stated that he obtained the money from a money exchange business in Altar, Mexico, and he did not have a receipt.

17. The total amount seized in this case was $20,291 in U.S. currency. CBP officers returned $291 in U.S. currency to MENDOZA-Quintero for humanitarian reasons.

## CONCLUSION

18. Based on the information contained in this affidavit, I believe there is probable cause that the $20,000 in U.S. Currency are forfeitable pursuant to Title 31, United States Code, Sections 5317 and 5332(c) for violations of Title 31, United States Code, Sections 5316 and 5332(a).

Further your affiant sayeth not.

Alexander S. Garcia
Special Agent
U.S. Homeland Security Investigations

Sworn before me this me this 11th day of December, 2012.

Notary Public

SYLVIA I. ROMERO
NOTARY PUBLIC - ARIZONA
PIMA COUNTY
My Commission Expires
October 03, 2015

Page 4